**The relief described hereinbelow is SO ORDERED.**

**SIGNED this 26th day of September, 2014.**



_____
Robert D. Berger
United States Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS
KANSAS CITY DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| HOMESTEAD COUNTRY CLUB, ) | Case No. 14-21966-11RDB |
| ) | |
| DEBTOR. ) | |
| ) | |

**AGREED ORDER GRANTING MOTIONS FOR ORDER
AUTHORIZING SALE OF REAL PROPERTY
FREE AND CLEAR OF ALL LIENS, INTERESTS AND ENCUMBRANCES**

This matter comes on for hearing upon the Debtor's Motion for Authority to Sell Property Free and Clear of Liens, Claims, Interests and Encumbrances to Evan-Talan Homes, Inc. ("Parcel One Motion") (Doc. 18), as amended (Doc. 66), Motion for Order Authorizing Sale of Real Property Free & Clear of all Liens, Interests & Encumbrances Pursuant to Back-Up Contract with R.M. Standard & Co. (Doc. 74) and Debtor's Motion For Order Authorizing Sale Of Real Property Free And Clear Of All Liens, Interests And Encumbrances To Kansas City Sustainable Development Partners, LLC ("Parcel Two Motion") (Doc. 42) (collectively, the "Motions"). The Debtor appears by Counsel, Colin N. Gotham of Evans & Mullinix, P.A.

00654290

Secured creditor TTC, LLC ("TTC") appears by Donald G. Scott and Michael J. Gorman. Equity Bank (Equity Bank) appears by Michael Tamburini of Levy Craig Law Firm. Whereupon, the Court fully apprised of the premises, rendered the following findings of fact, conclusions of law and orders as set forth below:

### Jurisdiction

1. The Court has jurisdiction over the Motions pursuant to 28 U.S.C. §1334. This is a core proceeding within the meaning of 28 U.S.C. §157(b)(2) and venue of this bankruptcy proceeding and this Motion is proper under 28 U.S.C. §§1408 and 1409. The statutory predicates for the relief sought herein are 11 U.S.C. §§105(a), 363(b) and (f).

### Findings of Fact and Conclusions of Law

2. On August 19, 2014, (the Petition Date) Homestead Country Club, ("Debtor") a Kansas Not for Profit Corporation, filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the Bankruptcy Code). Pursuant to §§1107 and 1108 of the Bankruptcy Code, the Debtor is operating its business as Debtor-in-Possession.

3. The Debtor's primary asset is a fee simple interest in real property located at 6510 Mission Road that is approximately fourteen (14) acres (the "Property").

4. TTC possesses a properly perfected, first priority security interest in all Debtor's assets, including the Property, by virtue of a duly recorded mortgage on the Property and a properly filed UCC-1 Financing Statement. Equity Bank does not claim a security interest in Debtor's assets. Equity Bank holds a perfected security interest in the Homestead Notes and the Homestead Mortgage (as such terms are defined in Equity Bank's Limited Objections to Debtor's Parcel One Motion and Parcel Two Motion (Doc. Nos. 61 and 63)), pursuant to a Collateral Assignment of Promissory Notes, Mortgage and Loan Documents dated November 13, 2014 to secure payment of a loan to TTC from Equity Bank.

5. On August 21, 2104, Debtor filed the Parcel One Motion, seeking authority to sell approximately 6 acres of the Property. On September 24, 2014, the Debtor filed a 2nd motion to sell the approximately 6 acres to a back-up Buyer.

6. On September 10, 2014, Debtor filed the Parcel Two Motion, seeking authority to sell the approximately eight (8) acres remaining of the Property.

    A.    Parcel One Motion

7. The Debtor has approximately six (6) acres in the front or eastern edge of its Property ("Parcel One") that enhances the park-like setting, but otherwise is not necessary for Debtor's operations.

8. The Debtor desires to sell Parcel One in order to provide capital to pay TTC in full, and for improvements and maintenance.

9. The Debtor, after exploring its alternatives, has determined in its business judgment that the sale of Parcel One is the best method for satisfying obligations to TTC in full when considering the time constraints imposed by the Debtor's creditors and the Bankruptcy Code.

10. The Debtor has negotiated a sale of Parcel One for a price of $2,000,000.00 to Evan-Talan Development, LLC (hereinafter "Evan"), pursuant to the Sale Agreement attached to the Parcel One Motion as Exhibit 1 (hereinafter the "Parcel One Sale Agreement"). The Debtor also negotiated a sale of Parcel One for a price of $2,000,000.00 to RM Standard & Co. (hereinafter RM Standard), pursuant to the Sale Agreement attached to the 2nd Parcel One Motion as Exhibit 1 filed on September 24, 2014. The sale to RM Standard is a back-up contract to the Parcel One Sale Agreement. The Sale Agreements with Evan and RM Standard shall both be referred to as "Parcel One Sale Agreement" herein.

11. The sale of Parcel One to Evan or RM Standard under the terms set forth in the Parcel One Sale Agreement, is fair and reasonable under the circumstances, and the Debtor's entry into the Parcel One Sale Agreement is well within its business judgment.

12. The marketing of Parcel One has been adequate and sufficient under the circumstances.

13. The offers of Evan and RM Standard to purchase Parcel One pursuant to the Parcel One Sale Agreement at private sale are currently the best offers for Parcel One.

14. The exact legal description of Parcel One will be determined by a survey prior to closing, but the approximate drawing of Parcel One is attached to the Parcel One Motion as Exhibit 2.

15. This sale of Parcel One under the current circumstances is in the best interest of the Chapter 11 estate and its creditors, is proposed in good faith and is fully justified and within the Debtor's business judgment.

16. The Parcel One Sale Agreement is the end result of arm's length negotiations with Evan and RM Standard regarding the transaction and the underlying Parcel One Sale Agreement. The Debtor entered into the Parcel One Sale Agreement, subject to approval of the Court, only after exploring alternatives to a sale and consideration of a sale on other terms and to other parties.

17. Evan and RM Standard are entitled to the protection of Section 363(m) of the Bankruptcy Code, 11 U.S.C. §363(m), as a "good faith purchaser" of Parcel One.

18. Evan and RM Standard are bona fide, good-faith purchasers for value and are, as is more fully described in the Parcel One Sale Agreement, prepared to purchase Parcel One upon the terms set forth in the Parcel One Sale Agreement.

19. The Debtor should be authorized to complete and to conduct the sale of Parcel One pursuant to Section 363(b) of the Bankruptcy Code to Evan, 11 U.S.C. §363(b) ("Section 363(b)") which permits sale of the property of the estate, other than in the ordinary course of business.

20. A sale of Parcel One (and Parcel Two) free and clear of liens is necessary to maximize the value of Debtor's assets.

21. A sale of Parcel One subject to liens would result in a lower purchase price and be of substantially less benefit to the Debtor's estate.

22. A sale of Parcel One free and clear of liens is particularly appropriate under the circumstances because any lien in, to or against the assets that exists immediately prior to the closing of the sales will attach to the sale proceeds with the same validity, priority, force and effect as it had at such time, subject to the rights and defenses of the Debtor or any party in interest.

23. Moreover, any holder of a lien that receives notice of the sale and which fails to object to the sale of the assets free and clear of liens should be deemed to consent to the sales, thereby complying with §363(f)(2) of the Bankruptcy Code.

      B.    <u>Parcel Two Motion</u>

24. The remainder of the Property consists of eight (8) acres which contain Debtor's pool, tennis courts, etc. ("Parcel Two").

25. Debtor desires to sell Parcel Two (along with Parcel One), then lease back Parcel Two, in order to provide sufficient funds to pay TTC in full, and for improvements and maintenance.

26. The Debtor, after exploring its alternatives, has determined in its business judgment that the sale and lease back of Parcel Two is the best method for satisfying its lenders when considering the time constraints imposed by the Debtor's creditors and the Bankruptcy Code.

27. The Debtor has negotiated a sale (and lease back) of Parcel Two with Kansas City Sustainable Development Partners, LLC (hereinafter "KCS"), pursuant to a Letter of Intent attached to the Parcel Two Motion as Exhibit 1 ("Parcel Two LOI").

28. Debtor shall negotiate a contract that is consistent with this Agreed Order which shall result in net proceeds which together with the net proceeds of the Parcel One Sale shall be sufficient to fully pay TTC. Debtor shall provide a copy of the contract to TTC within two (2) days of execution to evidence to TTC that sufficient proceeds are available to repay TTC in full.

29. Debtor agrees a formal contract memorializing the Parcel Two LOI shall be executed no later than October 31, 2014.

30. It shall be a default hereunder if Debtor shall fail to timely enter into a binding contract for Parcel Two in accordance with paragraphs 28 and 29.

31. The sale of Parcel Two to KCS under the terms set forth in the Parcel Two LOI, is fair and reasonable under the circumstances, and the Debtor's entry into the Parcel Two LOI is well within its business judgment.

32. The marketing of Parcel Two has been adequate and sufficient under the circumstances.

33. The offer of KCS to purchase Parcel Two pursuant to the Parcel Two Agreement at private sale is currently the best offer for Parcel Two.

34. The exact legal description of Parcel Two will be determined prior to closing.

35. The proposed sale of Parcel Two to KCS and the proposed sale of Parcel One to Evan or RM Standard will convey the totality of Debtor's Real Estate.

36. This sale of Parcel Two under the current circumstances is in the best interest of the Chapter 11 estate and its creditors, is proposed in good faith and is fully justified and within the Debtor's business judgment.

37. The Parcel Two LOI is the end result of arm's length negotiations with KCS regarding the transaction and the underlying Parcel Two LOI. The Debtor entered into the Parcel Two LOI, subject to approval of the Court, only after exploring alternatives to a sale of Parcel Two and consideration of a sale on other terms and to other parties. KCS is entitled to the protection of Section 363(m) of the Bankruptcy Code, 11 U.S.C. §363(m), as a "good faith purchaser" of the Property.

38. KCS is a bona fide, good-faith purchaser for value and is, as is more fully described in the Parcel Two LOI, prepared to purchase Parcel Two upon the terms set forth in the Parcel Two LOI.

39. The Debtor should be authorized to complete and to conduct the sale of Parcel Two pursuant to Section 363(b) of the Bankruptcy Code to Purchaser, 11 U.S.C. §363(b) ("Section 363(b)") which permits sale of the property of the estate, other than in the ordinary course of business.

40. A sale of Parcel Two free and clear of liens is necessary to maximize the value of the Property. A sale subject to liens would result in a lower purchase price and be of substantially less benefit to the Debtor's estate.

41. A sale of Parcel Two free and clear of liens is particularly appropriate under the circumstances because any lien in, to or against the assets that exists immediately prior to the

closing of the sales will attach to the sale proceeds with the same validity, priority, force and effect as it had at such time, subject to the rights and defenses of the Debtor or any party in interest. Moreover, any holder of a lien that receives notice of the sale and which fails to object to the sale of the assets free and clear of liens should be deemed to consent to the sales, thereby complying with §363(f)(2) of the Bankruptcy Code.

## Further Findings

42. Proper, timely adequate and sufficient notice of the Motion has been provided in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules.

43. A reasonable opportunity to object or to be heard regarding the requested relief to sell the Property has been afforded to all interested persons and entities.

44. Debtor acknowledges and stipulates it has had more than a year to locate purchasers for Parcel One and Parcel Two after diligent efforts and is satisfied that the present offers for Parcel One and Parcel Two are currently the best offers available.

45. Debtor has evaluated and considered the potential effect of deed restrictions affecting Parcel One and Parcel Two and the requirement to comply with the City of Prairie Village, Kansas ordinances regarding platting, zoning and use as a club and all of the related requirements and time restraints affecting the sale of Parcel One and Parcel Two and has knowingly agreed to the February 28, 2015 sale deadline set forth herein.

46. The Debtor agrees it is a condition precedent to closing that Debtor satisfy any taxes owed to Johnson County, Kansas and the entire outstanding debt to TTC with the proceeds of the proposed sales of Parcel One and Parcel Two.

47. Debtor agrees that the sale of Parcel Two shall be part of a simultaneous closing with the sale of Parcel One and such contracts shall be modified accordingly.

48. Debtor agrees that if the sale of either Parcel One or Parcel Two shall fail to close for any reason, any sale of the other Parcel shall be null and void unless TTC is otherwise paid in full on or before February 28, 2015.

49. Debtor shall immediately report to TTC and to the Court any termination of either contract for the sale of Parcel One or the LOI or contract for the sale of Parcel Two.

50. The Debtor acknowledges and agrees that if the sales of Parcel One and Parcel Two are not closed as required herein by February 28, 2015, or if Debtor otherwise defaults hereunder, the automatic stay shall terminate pursuant to §§362(d)(1) and/or (d)(2) of the Bankruptcy Code to permit TTC to enforce its rights and remedies under the TTC loan documents (the "Lift Stay Order"); and Debtor hereby consents to the entry of the Lift Stay Order pursuant to §362(f) of the Bankruptcy Code. The Debtor acknowledges that it has negotiated this provision in good faith with TTC and understands the consequences of the agreements in this paragraph pursuant to which it has knowingly agreed to these terms after evaluating all alternatives.

51. Debtor after appropriate inquiry stipulates the TTC debt is fully owing and is secured by perfected security interest, and that the total amount due and owing to TTC from Debtor totals $3,237,475.98 as of the date of filing, plus interest thereafter at the per diem rate of $654.60 (which would total $125,028.60 for 191 days from August 19, 2014 through February 28, 2015), plus TTC's post-petition reasonable attorneys' fees and expenses subject to Court approval.

52. Debtor has knowingly represented after appropriate inquiry that the Parcel One sale and Parcel Two sale will close by February 28, 2015.

53. Debtor has solicited TTC to agree to a delayed sale date and not pursue its remedies as set forth under TTC, LLC's Objections To Debtor's Motion For Order Authorizing Sale Of Real Property Free And Clear Of All Liens, Interests And Encumbrances [To Evan-Talan Homes, Inc.] (Docket No. 18) And Motion For Order Authorizing Sale Of Real Property Free And Clear Of All Liens, Interests And Encumbrances To Kansas City Sustainable Development Partners, LLC (Docket No. 42) filed by TTC on September 22, 2014, opposing the sale, and Response In Opposition To Debtor's Motion And Amended Motion For Approval Of Preliminary Order Pursuant To 11 U.S.C. §363 And Fed.R.Bankr.Proc. 4001 Concerning The Use Of Cash Collateral And Providing For Adequate Protection And Related Matters filed September 22, 2014, opposing the use of cash collateral.

54. TTC has relied on Debtor's representations and agreements that Parcel One and Parcel Two will close on or before February 28, 2015, and that TTC will be paid in full or the stay shall be lifted, as material consideration to enter into this Agreed Order and discontinue the scheduled hearings on September 29 and September 30, 2014.

55. TTC's agreements herein are for the purposes of this Agreed Order only, and TTC reserves all rights to dispute legal and factual issues related to sales of property securing its claims in the event TTC's claims are not fully satisfied on or before February 28, 2015.

56. Debtor agrees to file a motion to dismiss this case upon the closing of the simultaneous sales of Parcel One and Parcel Two.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED:

1. The Debtor's Motions are granted as modified herein.

2. The Parcel One Sale Agreement is approved in its entirety and the sale of Parcel One pursuant to the Parcel One Sale Agreement is hereby authorized subject to the conditions set forth below.

3. The Parcel One Sale is conditioned on the simultaneous closing of the Parcel Two Sale and vice versa and full payment of TTC set forth in paragraph 51.

4. The Debtor and its officers, directors and employees shall be and are hereby authorized and directed, pursuant to Sections 363(b) and 363(f) of the Bankruptcy Code, to execute and deliver all such documents as are reasonably necessary to perform the Debtor's obligations under the Parcel One Sale Agreement and to take such actions as are reasonably necessary to fully perform the terms of the Parcel One Sale Agreement.

5. At the closing of the sale of Parcel One, Evan or RM Standard, pursuant to 11 U.S.C. §363(f), shall acquire Parcel One free and clear of all liens, claims, encumbrances and interests on or affecting Parcel One, including but not limited to any mortgages and unpaid real property taxes, and any such liens, claims, encumbrances and interests asserted shall be and are terminated as to Parcel One and shall attach to the net sale proceeds with the same validity, force and extent and in the same priority, as they are held in and to Parcel One prior to the sale, without the necessity of any act or filing, subject to the claims or defenses of the Debtor and other parties, provided however that the sale of Parcel Two shall close simultaneously or TTC is otherwise paid in full on or before February 28, 2015.

6. Each creditor holding a lien, claim, interest or encumbrance in Parcel One are directed to execute such documents and take all other actions as may be reasonably requested by Evan or RM Standard to release such liens, claims, interests or encumbrances against or interests in and to Parcel One, as such liens, claims, interests and encumbrances may have been recorded

or may otherwise exist, to permit sale and purchase of Parcel One in accordance with this order, provided that a certified copy of this Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any of such liens, claims, encumbrances and interests against or interests in and affecting Parcel One.

7. The Parcel One Sale is in the best interest of the Chapter 11 estate and its creditors, is proposed in good faith and fully justified.

8. The Parcel One Sale Agreement was negotiated at arm's length. There has been no self-dealing, bad faith, fraud, or unfair dealing relative to the negotiation of the Parcel One Sale Agreement by the Debtor.

9. Evan or RM Standard, as purchaser of Parcel One, is entitled to receive the benefits accorded a good faith purchaser pursuant to Section 363(m) of the Bankruptcy Code, 11 U.S.C. §363(m).

10. This Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease, and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Parcel One Sale Agreement and this Order.

11. The Parcel Two LOI is approved in its entirety and the sale of Parcel Two pursuant to the Parcel Two LOI is hereby authorized.

12. Debtor shall reduce the Parcel Two LOI to a binding, executed contract by October 31, 2014 which is consistent with this Order and shall immediately file a copy of such contract with this Court confirming it is consistent with this Order, and shall provide TTC with a copy thereof within two (2) days of execution.

13. The Debtor and its officers, directors and employees shall be and are hereby authorized and directed, pursuant to Sections 363(b) and 363(f) of the Bankruptcy Code to execute and deliver all such documents as are reasonably necessary to perform the Debtor's obligations under the Parcel Two LOI and to take such actions as are reasonably necessary to fully perform the terms of the Parcel Two LOI.

14. At the closing of the sale of Parcel Two, KCS, pursuant to 11 U.S.C. §363(f), will acquire Parcel Two free and clear of all liens, claims, encumbrances and interests on or affecting Parcel Two, including but not limited to any mortgages and unpaid real property taxes, and any such liens, claims, encumbrances and interests asserted shall be and are terminated as to Parcel Two and shall attach to the net sale proceeds with the same validity, force and extent and in the same priority, as they are held in and to Parcel Two prior to the sale, without the necessity of any act or filing, subject to the claims or defenses of the Debtor and other parties, provided however that the sale of Parcel Two shall close simultaneously with the sale of Parcel One.

15. Each creditor holding a lien, claim, interest or encumbrance in Parcel Two are directed to execute such documents and take all other actions as may be reasonably requested by the KCS to release such liens, claims, interests or encumbrances against or interests in and to Parcel Two, as such liens, claims, interests and encumbrances may have been recorded or may

otherwise exist, to permit sale and purchase of Parcel Two in accordance with this Order, provided that a certified copy of this Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any of such liens, claims, encumbrances and interests against or interests in and affecting the Property.

16. The sale of Parcel Two is in the best interest of the Chapter 11 estate and its creditors, is proposed in good faith and fully justified.

17. The Parcel Two LOI was negotiated at arm's length. There has been no self-dealing, bad faith, fraud, or unfair dealing relative to the negotiation of the Parcel Two Agreement by the Debtor.

18. KCS is entitled to receive the benefits accorded a good faith purchaser pursuant to Section 363(m) of the Bankruptcy Code, 11 U.S.C. §363(m).

19. This Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease, and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Parcel Two Agreement and this Order.

20. Notwithstanding that this Order authorizes and directs the sale of Parcel One and Parcel Two free and clear of liens, claims, encumbrances and interests, the Court orders that the

title company or other escrow agent disburse the proceeds of the Parcel One and Parcel Two sales in the following priority:

      a.      Payment of regular and customary costs of sale;

      b.      Payment of any United States Trustee fee;

      c.      Satisfaction of all outstanding real estate taxes owed to Johnson County, Kansas or other taxing authorities;

      d.      Payment in full of all amounts owed by Debtor to TTC, in the amount of $3,237,475.98 as of the date of filing, plus interest thereafter at the per diem rate of $654.60 (which would total $125,028.60 for 191 days from August 19, 2014 through February 28, 2015), plus TTC's post-petition reasonable attorneys' fees and expenses subject to Court approval; and

      e.      Balance to the Debtor.

21. The Parcel One Sale and Parcel Two Sale contemplated by this Order shall occur simultaneously or the Debtor shall otherwise pay TTC in full in a single transaction, on or before February 28, 2015.

22. Should the sale of either Parcel One or Parcel Two fail to close simultaneously or TTC is not paid in full, then any sale of the other Parcel shall be null and void, and this Court shall enter its order returning the parties to the pre-closing status quo. Debtor is permitted to sell Parcel One or Parcel Two only provided TTC is paid in full on or before February 28, 2015.

23. Should the sales of Parcel One and Parcel Two fail to close simultaneously on or before February 28, 2015 or should the Debtor otherwise fail to pay TTC in full on or before February 28, 2015, or the Debtor shall otherwise default hereunder, this Court shall order that the

automatic stay of §§363(d)(1) and/or (d)(2) of the Bankruptcy Code is lifted and secured creditor TTC may pursue its state law remedies.

24.  If TTC is not paid in full on or before February 28, 2015, TTC may raise/litigate any issue including deed restrictions recorded against the Property at a later time if appropriate. TTC's agreements, if any, set forth in this Order or the findings above, are for the purposes of this Agreed Order only.

25.  Debtor shall file a motion to dismiss this case upon simultaneous closing of the sales of Parcel One and Parcel Two

26.  This is a final order and is enforceable upon entry and to the extent necessary under Fed. R. Bankr. Pro. 5003, 9014, 9021 and 9022. The Court expressly finds that there is no just reason for delay in the implementation of this Order and expressly directs entry of judgment as set forth herein. The stay imposed by Fed. R. Bankr. Pro. Rule 6004 (h) is hereby modified and shall not apply to the transactions proposed in accordance with this Order and the terms of the sale Agreement.

27.  TTC agrees to not oppose any zoning, variance, or any other application filed with the City of Prairie Village, KS or Johnson County, KS that is associated with Parcel One and Two or any property or operation of the Debtor.

28.  TTC agrees to not oppose any Special Use Permit filed by Homestead with the City of Prairie Village, KS.

29.  Notwithstanding anything to the contrary herein, the Debtor shall be allowed to substitute the Buyers of Parcels One and/or Two provided the substitution results in full payment to TTC. The LOI and subsequent contracts with KC Sustainable may be assigned to Ad In Development, LLC without further Order of the Court, and Ad In Development, LLC shall be

substituted as the purchaser for KC Development, LLC, and shall be subject to all terms of this Order. The purchase price from KC Sustainable to Debtor may increase without further amendment or Order from the Court. The deadlines associated with the Evan and RM Standard contracts may be revised without further amendment or Order from the Court provided that TTC is paid in full on or before February 28, 2015.

30. TTC shall not oppose the substitution of any bona fide disinterested Buyer for Parcel One and/or Parcel Two or in any fashion oppose the payment in full of the debt and satisfaction of obligations to TTC, LLC, provided such payment and satisfaction occurs on or before February 28, 2015.

31. Notwithstanding anything contained herein, the Debtor shall be allowed to tender full payment to TTC on or before February 28, 2015.

32. TTC shall take no affirmative actions to encourage or induce the purchasers of Parcel One and Parcel Two to not close.

IT IS SO ORDERED.

# # #

Submitted by:

Evans & Mullinix, P.A.

*/s/ Colin N. Gotham*
Colin N. Gotham, KS#19538, MO#52343
7225 Renner Road, Suite 200
Shawnee, KS 66217
(913) 962-8700; (913) 962-8701 (Fax)
cgotham@emlawkc.com
*Attorneys For The Debtor*

McDOWELL, RICE, SMITH & BUCHANAN
     A Professional Corporation


By: *s/ Donald G. Scott*
Donald G. Scott, KS #25706
     KS Fed Dist. Ct. #70066
350 Skelly Building
605 W. 47th Street
Kansas City, MO 64112-1905
Telephone:    816/753-5400
Telecopier:    816/753-9996
dscott@mcdowellrice.com
ATTORNEYS FOR TTC, LLC


LEVY CRAIG LAW FIRM


*By: /s/ Michael Tamburini*
Michael M. Tamburini
     KS Fed Dist. Ct #70049
1301 Oak Street
Kansas City, MO 64106
(816) 474-8181
Fax (816) 382-6618
mtamburini@levycraig.com
ATTORNEYS FOR EQUITY BANK

00654290                   18